### HODGE v. CUSHING.

(Circuit Court of Appeals, Fifth Circuit. December 12, 1922.)

No. 3880.

Banks and banking ☞250(5)—Evidence held not to show defendant was stockholder of insolvent national bank.

> Evidence that defendant had agreed to purchase some of the stock of a national bank from the vice president thereof, and had given his note to the vice president, with the understanding the latter was to hold the note until it was paid out of dividends received on the stock, and that a certificate for the stock in defendant's name was written out and signed by the vice president, but not by the cashier, and that the seal was not affixed, as was necessary to give the certificate validity, nor was any attempt made to deliver the certificate, does not show that defendant became a stockholder in the bank, so as to be liable for the par value of the stock after its insolvency.

In Error to the District Court of the United States for the Northern District of Texas; James Clifton Wilson, Judge.

Action at law by E. B. Cushing, as receiver of First National Bank of Ranger, Tex., against F. P. Hodge. Judgment for plaintiff on directed verdict in his favor, and defendant brings error. Reversed, and new trial ordered.

J. M. Wagstaff, of Abilene, Tex. (Wagstaff, Harwell & Wagstaff, of Abilene, Tex., and Chandler & Pannill, of Stephensville, Tex., on the brief), for plaintiff in error.

Leonard M. Levy, of Fort Worth, Tex. (Levy & Evans, of Fort Worth, Tex., on the brief), for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. F. P. Hodge was sued by E. B. Cushing, as receiver of the First National Bank of Ranger, Tex., appointed as such by the Comptroller of the Currency, to recover an assessment of $100 per share made against said Hodge for his alleged individual liability as a stockholder on 20 shares of the capital stock of said bank. The defense in said case was that said Hodge was not a stockholder liable to such assessment.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The undisputed facts were: That Hodge was not an original subscriber to the capital stock of said bank. That about October 20, 1920, he was approached by one Hedrick, vice president of said bank, and requested to purchase some stock in it. He demurred on the ground of want of funds. Hedrick offered to sell him 20 shares of said stock, to take Hodge's note for the price thereof, and carry it until it was paid by dividends, stating that a 30 per cent. dividend would be issued in January, 1921. Hodge was to get the stock when the dividends paid the note, and not until then. It was agreed that Hedrick was not to turn over the note to any one, but was to keep it himself. The note was payable to "ourselves." It was in fact turned over to the bank, and Hedrick credited with the amount of it. Hodge never attended a stockholders' meeting. He received no certificate of stock. No dividend was declared thereafter by the bank, and nothing paid or demanded on the note. Hodge was not connected in any way with the bank, being employed in another business.

The only place where his name appeared on any book of the bank was that in the stock book there was a certificate of stock filled out with the name of F. P. Hodge. This certificate was signed only by Hedrick as vice president. To be completed it needed the corporate seal, which was called for by the certificate itself, and the signature of the cashier. The seal was never affixed, nor the cashier's signature made. No one purported to have received the certificate. The evidence does not show that it was stated to have been transferred from any former certificate. It was apparently purposely left incomplete.

The stock ledger was not introduced. While the former receiver, Murphy, testified that this 20 shares was needed to make up the $200,000 total capital stock of the bank, he does not in any way negative the fact that these 20 shares, if not regarded as issued to Hodge, would stand on the books of the bank as issued to the holder, from whom this certificate, when completed, would have transferred them. At the conclusion of the evidence, the District Judge directed a verdict in favor of the receiver against Hodge, holding that he was liable as a stockholder of said bank for the assessment sued for.

It is insisted that the evidence did not show that he was such stockholder. Taking the evidence as a whole, we think it failed to show that Hodge became a stockholder of the bank. No evidence was introduced, indicating that his name had been placed on the records of the bank as one of the shareholders.

The only book offered in evidence indicated that no certificate of stock had been made out for delivery to him, but only an incomplete certificate, signed alone by the vice president, when it required the signature of the cashier and the affixing of the corporate seal to complete it, which indicated a purpose not to create a certificate ready for delivery, but to hold it as not a completed transfer. The only reason which the evidence suggests for this course of conduct is that the contract between Hedrick and Hodge did not contemplate the transfer of the stock to Hodge until the note was paid; that the complete title to the stock remained meanwhile in the seller.

This is not the case of a completed sale of shares of stock, where the

certificate representing them with a power of attorney for their transfer has been duly delivered to the buyer, or where the seller has done all in his power to effect a transfer. Matteson v. Dent, 176 U. S. 521, 530, 20 Sup. Ct. 419, 44 L. Ed. 571. On the contrary, the circumstances indicate a purpose not to make an immediate transfer, and that Hodge did not become a stockholder of the bank.

We therefore think the District Judge erred in directing a verdict for the plaintiff, and the judgment of the District Court is reversed, and a new trial ordered.